# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## Case no. 15-1459

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. | ) |
| JUAN N. WALTERSPIEL, M.D., F.A.A.P., | ) |
| | ) |
| Plaintiff - Appellant, | ) Appeal from the |
| | ) United States District |
| v. | ) Court for the Middle |
| | ) District of North Carolina |
| BAYER AG; QUINTILES TRANSNATIONAL | ) |
| CORP.; JOHN DOE, JOE DOE, and | ) Cause No. Below: |
| JANE DOE, | ) 1:12-cv-00773-LCB-JEP |
| | ) Hon. Loretta C. Biggs |
| Defendants - Appellees. | ) District Judge |

## PLAINTIFF-APPELLANT JUAN N. WALTERSPIEL, M.D., F.A.A.P.'S OPENING BRIEF

Mick G. Harrison, Esq.
520 S. Walnut Street, #1147
Bloomington, IN  47402
(812) 361-6220 voice
(812) 650-4374 fax
mickharrisonesq@gmail.com
Counsel for Appellant Juan N. Walterspiel, M.D., F.A.A.P.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____       Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.      Does party/amicus have any parent corporations?                          YES     NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                               YES     NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
(signature)                                                          (date)

# TABLE OF CONTENTS

Page:

DISCLOSURE STATEMENT . . . . 2

TABLE OF AUTHORITIES . . . . . 7

I.   JURISDICTIONAL STATEMENT . . . 10

     A.   Jurisdiction of the District Court . . 10

     B.   Jurisdiction of the Court of Appeals . . 12

II.  ISSUES PRESENTED . . . . . 13

III. STATEMENT OF THE CASE . . . 14

     A.   Facts Relevent to the Issues . . . 14

     B.   Procedural History . . . . 19

     C.   Rulings Presented for Review . . . 23

IV.  SUMMARY OF ARGUMENT . . . 24

V.   ARGUMENT . . . . . . 28

     A.   Plaintiff Dr. Walterspiel Satisfied the Normal
          Pleading with Plausibility Standard and the
          Particularity Requirements of Rule 9(b). . 28

     B.   A "Relaxed" Rule Regarding Pleading with
          Particularity Should Have Been Applied by
          The District Court Because the Bulk of the
          Records Evidencing the Additional Particulars
          of the False Claims Remain under the Control
          of the Defendants. . . . . 37

     C.   The Defendants' False Statements and False
          Claims Alleged by Plaintiff Were Material to

the Federal Government's Decisions to Pay
Defendant Bayer AG's Claims for Payment.        **39**

**D.**    **Plaintiff Dr. Walterspiel Should Have Been
Granted Leave to Amend his Complaint to
Add More Particulars Based on Information
that Was Available and of which the Court
Could Take Judicial Notice.    .        .        .        41**

**E.**    **Defendant Bayer AG, a German Company,
Was Validly Served with Process via Service
on Its Corporate Subsidiary and Agent in the
United States.        .        .        .        .        .        43**

**F.**    **Plaintiff Should Have Been Allowed More Time
to Serve Bayer AG in Germany Given that there
Is No Deadline in the Federal Rules for Service
in a Foreign Country.    .        .        .        .        50**

**G.**    **The District Court Abused Its Discretion in
Adopting the Magistate's Decision *In Toto*
without Addressing Any of Plaintiff's Detailed
Objections Thereto.        .        .        .        .        53**

**CONCLUSION**    .        .        .        .        .        .        .        **54**

**CERTIFICATE OF COMPLIANCE**        .        .        .        **56**

**CERTIFICATE OF SERVICE**        .        .        .        .        **57**

# TABLE OF AUTHORITIES

**Page:**

**Cases:**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  .        .        .        .        .        34

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).        .        .        34

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*,
148 F.3d 1080, 1089-90 (1998) .        .        .        .        .        .        .        49

*In Re Ciprofloxacin Hydrochloride Antitrust Litigation*,
Case No. 1:00-MDL-1383, Memorandum and Order
(E.D. N.Y. March 3, 2005        .        .        .        .        .        .        .        42, 48

*Conley v. Gibson*, 355 U.S. 41, 48 (1957)        .        .        .        .        .        52

*Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir.1987) .        .        .        38

*District of Columbia ex rel. American Combustion, Inc.*
*v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C.Cir. 1986)  .        .        52

*EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000)        38

*Foman v. Davis*, 371 U.S. 178, 181-82 (1962)        .        .        .        .        52

*General Elec. Co. v. Deutz Ag*, 270 F.3d 144 (3rd Cir 2001)        .        .        .46

*Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 840-41 (4th Cir. 1974)        51

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir.1999)        .        .        .        .        .        .        35, 37, 41

*Howard v. DeCordovo*, 177 U.S. 609, 614 (1899)  .        .        .        .        52

*International Ladies' Garment Workers' Union v. Donnelly Garment Co.*,
121 F.2d 561 (8th Cir. 1941)        .        .        .        .        .        .        52

*Lucas v. Natoli*, 936 F.2d 432, 432 (9th Cir. 1991)  .        .        .        .        51

*Mathews v. Diaz*, 426 U.S. 67, 75 & n. 9 (1976)     .     .     .     .     52

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
848 F.2d 674, 680 (6th Cir.1988)     .     .     .     .     .     .     38

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989) .     51-52

*Pirelli Armstrong Tore Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436, 441-42 (7th Cir. 2011)     .     .     .     .     .     .     38

*U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011)     .     .     42

*U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir.2003)     .     38

*U.S. ex rel. Estate of Cunningham v. Millenium Labs of Cal., Inc.*,
713 F.3d 662, 676 (1st Cir. 2013)     .     .     .     .     .     .     42

*U.S. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).     .     .     39

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009)     39

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220, 229 (1st Cir. 2004)     .     .     .     .     .     .     38

*U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*,
417 F.3d 450, 454-55 (5th Cir. 2005).     .     .     .     .     .     42

*Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999)     .     26, 35, 37, 42

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)  .     38-39

*WW Extended Care, Inc. v. Aetna Life Ins. Co.*,
755 N.E.2d 712, 716 (Ind. App. 2001).     .     .     .     .     .     46

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) 52

**Statutes and Rules:**

28 U.S.C. § 1291 . . . . . . . . . 12

28 U.S.C. § 1331 . . . . . . . . . 10

28 U.S.C.A. § 1653 . . . . . . . 49, 51-53

31 U.S.C. § 3729 . . . . . . . . . 10

31 U.S.C. §§ 3730 . . . . . . . . 10, 11

31 U.S.C.A. § 3732 . . . . . . . . 10, 45

Fed.R.Civ.P. 4 . . . . . . 10, 27-28, 44, 46, 51

Fed.R.Civ.P. 8 . . . . . . . . . 39

Fed.R.Civ.P. 9(b) . . . . . 24-25, 34-35, 37, 39

Fed.R.Civ.P. 15(a) . . . . . . . . 52

Fed.R.Evid. 201 . . . . . . . . . 42

# I.     JURISDICTIONAL STATEMENT

## A.     Jurisdiction of the District Court

Jurisdiction is provided by the False Claims Act, 31 U.S.C. §§ 3730, 3732(a).  Qui Tam Plaintiff/Relator Dr. Walterspiel seeks in this action, pursuant to 31 U.S.C. § 3730, remedies including fines and penalties and damages on behalf of the United States Government, and the relator's share on his own behalf, for violations of 31 U.S.C. § 3729 including the submission of false claims and false statements by Defendants.  Jurisdiction for the District Court to hear this action is also provided by 28 U.S.C. § 1331, as this action involves one or more federal questions.

The Complaint was filed in camera and maintained under seal for at least 60 days pursuant to 31 U.S.C. § 3730(b)(2).  Pursuant to 31 U.S.C. § 3730(b)(2), a copy of the Complaint and a written disclosure of substantially all material evidence and information possessed by Qui Tam Relator Dr. Walterspiel related to the claims brought in the Complaint were served on the United States Government, including the United States Attorney, pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  A copy of the Complaint was also served upon the Attorney General of the United States.

Prior to filing the Complaint, Qui Tam Relator Dr. Walterspiel voluntarily provided to the United States Government the information in his possession

regarding the False Claims Act violations addressed in the Complaint.  The claims herein were not based upon public disclosures of such matters.  Qui Tam Relator Dr. Walterspiel is an original source of the information and evidence he disclosed to the government in support of the False Claims Act claims stated in the Complaint, as "original source" was defined in 31 U.S.C. § 3730(e)(4) at the time of filing the Complaint (2009).  Dr. Walterspiel has direct and independent knowledge of the information on which the allegations in his Complaint are based.

As stated in the Complaint, Dr. Walterspiel is a medical doctor and pediatrician who alleges that Defendants violated the federal False Claims Act by the submission of false claims and/or by the making of false statements relating to fraud in the conduct of a study of the adverse effects of the drug known as Cipro in children.  JA 179, DE 1 at ¶¶ 51-101.  Cipro is the drug originally chosen by the United States government for use in responding to potential terrorist attacks using anthrax as a biological warfare agent.  The Complaint alleges that Defendant Quintiles Transnational Corp. is the company that contracted with Bayer AG to perform the study which was falsified.  The Complaint alleges, *inter alia*, that Defendant Bayer AG is the pharmaceutical company that submitted the false study results to the Federal Food and Drug Administration (FDA) in order to obtain a patent extension for Cipro which extension enabled Bayer to overcharge the United States for the government's Cipro purchases by dishonestly avoiding generic

competition that would otherwise have been available during the patent extension period. JA 179, DE 1 at ¶¶ 51-101.

## B.     Jurisdiction of the Court of Appeals

The federal statute that provides appellate jurisdiction to this Court of Appeals is 28 U.S.C. § 1291.  Plaintiff-Appellant Dr. Walterspiel here appeals to the United States Court of Appeals for the Fourth Circuit from the final Order and final Judgment for Defendants entered in this action on March 25, 2015 in their entirety (JA 21, DE 91; JA 22, DE 90). The District Court's final Order and final Judgment disposed of all claims of all parties in this action, dismissing all of Plaintiff's claims against all Defendants.

Plaintiffs-Appellants Notice of Appeal was filed in the District Court on April 24, 2015.  JA 17, DE 92.  This filing was within 30 days of the District Court's final Order and final Judgment and therefore was timely.

There have been no prior appeals in this case.

## II.    ISSUES PRESENTED

A.    Whether Plaintiff Dr. Walterspiel satisfied the normal pleading with plausibility standard and the particularity requirements of Rule 9(b).

B.    Whether a "relaxed" pleading with particularity rule should have been applied by the District Court because most of the records evidencing the additional particulars of the false claims remain under the control of the Defendants.

C.    Whether the Defendants' false statements and false claims alleged by Plaintiff were material to the Federal Government's decisions to pay Defendant Bayer AG's claims for payment.

D.    Whether Plaintiff Dr. Walterspiel should have been granted leave to amend his Complaint to add more particulars based on information that was available and of which the Court could take Judicial Notice.

E.    Whether Bayer AG, a German company, was validly served with process via service on its corporate subsidiary and agent in the United States.

F.    Whether Plaintiff should have been allowed more time to serve Bayer AG in Germany given that there is no deadline in the Federal Rules for service in a foreign country.

G.    Whether the District Court abused its discretion in adopting the Magistate's Opinion and Recommendation *In Toto* without addressing any of Plaintiff's detailed Objections thereto.

# III.   STATEMENT OF THE CASE

## A.   Facts Relevant to the Issues Presented

It is uncontested that Dr. Walterspiel served process on Defendant Quintiles and Quintiles appeared.

Dr. Walterspiel also served process on Bayer Corporation in Pittsburgh, Pennsylvania.  JA 352; DE 82-2 (FEDEX documentation re Bayer service); JA 355; DE 82-3 (FEDEX documentation re Bayer service); JA 358; DE 82-4 (Constable Invoice for Bayer service in Pittsburgh).  The Complaint and Sumons were sent to Bayer AG in Germany by Dr. Walterspiel via FEDEX.  JA 359; JA 360, DE 82-5 (FEDEX documentation for summons and complaint sent to Bayer in Germany).

Bayer Corporation in Pittsburgh and its other offices in the United States, and its corporate predecessors, served as an agent for Defendant Bayer AG in the United States both in regard to sales of the antibiotic Cipro to the United States Government and in regard to the Cipro study alleged in the Complaint to have been falsified.  JA 213; DE 88-1 (United States Department of Health and Human Services (DHHS) public notice re agreement to purchase Cipro from Bayer Corporation); JA 216; JA 224; JA 244; JA 248; DE 88-6 (U.S. District Court, E.D. N.Y. Order re Cipro Antitrust Litigation); JA 326; DE 88-7 (U.S. FDA report on Bayer Corporation Cipro study); JA 338; DE 88-8 (Bayer Corporation contract

with Walterspiel for Cipro study consultation); JA 340; DE 88-9 (Bayer AG report noting that Bayer Corporation in Pittsburgh is a fully consolidated subsidiary of Bayer AG); JA 346; DE 88-10 (U.S. Federal Drug Administration inspection report regarding Bayer's Cipro study).

On September 9, 2013, Quintiles, although not a subject of the Clerk's Notice regarding service of process, filed a reply to Dr. Walterspiel's Response to the Clerk's Notice regarding service on Bayer AG. JA 81; DE 83.  In this reply, Quintiles argued, as it had in its Motion to Dismiss, that Dr. Walterspiel's claims against Bayer AG should be dismissed for insufficient service of process.

Bayer Corporation and Bayer AG have received large contracts with Federal Government agencies. *See*, JA 349, DE 88-12; JA 347, DE 88-11. It is also well documented that the United States purchased large quantities of Cipro® from Bayer. *See*, JA 213, DE 88-1 (U.S. Dept. of Health and Human Services 2001 Bayer Cipro® negotiations); JA 216, DE 88-2  (Boston Univ. report on U.S. Cipro® purchases from Bayer in three installments); JA 224, DE 88-3 (Congressional Research Service report noting 2004 appropriations for Anthrax defense); JA 243, DE 88-4 (GAO report noting Cipro® is purchased for the U.S. Strategic National Stockpile).

Plaintiff alleged in the Complaint, JA 179, DE 1 at ¶ 22, that "Bayer A.G.'s principal place of business in the United States is Pittsburgh, Pennsylvania".

Plaintiff Dr. Walterspiel plead numerous specific facts in his Complaint that reflected his personal knowledge and prior access to certain of Defendants' records and personnel regarding the false claims violations alleged. The Cipro® six months market exclusivity extension was granted to Bayer AG in December of 2003. Complaint, JA 179; DE 1 at ¶ 51. Bayer submitted to FDA Bayer studies #100169 and #100201 in support of its application. *Id.* ¶ 52. Dr. Walterspiel found improbable joint angle measurements in some subjects and asked Ms. Renee Perroncel, the senior clinical research associate that Bayer had assigned to Dr. Walterspiel, to help him find the correct data. *Id.* ¶ 56. Ms. Perroncel agreed that the measurement data in question were wrong and brought the issue to the attention of Bayer's management.

The Cipro® patent extension team was led by a neurologist. *Id.* ¶ 57. Ms. Perroncel was asked by the neurologist to "confirm" the values by asking the investigators to sign that these values were measured at their sites and correct. Ms. Perroncel told Walterspiel thereafter that letters from the investigators had arrived. *Id.* ¶ 58. Such confirmations were false, and should have appeared so on their face. *Id.* ¶ 70.

Relator Walterspiel's doubts about the integrity of the data were increased when he noticed a lack of variability in the measurements from some sites, and a lack of use of any analytical methods by Bayer or Quintiles to flag suspect data. *Id.*

¶ 59. Such analytical tools are commonly used by Pharmaceutical company statisticians prior to study databank closure, and were taught to Dr. Walterspiel during a course at the FDA. *Id*. Part of the safety data to be collected were maximal and minimal angles to which joints could be freely moved before, after and longer after the study. This was to detect short and long term joint cartilage or tendon damage. *Id*. ¶ 63. While retrieving data from the database on adverse effects, Walterspiel noted long rows of joint angle data that were obviously just "filled in," that repeated themselves and did not reflect the normal variations that other investigators recorded. Some of these data included implausible values. Relator took to Ms. Perroncel examples of anomalous data. *Id*. ¶ 64. Walterspiel noticed that there were several entries having values for joint angles that were scientifically impossible, i.e. joint angles indicating a range of movement impossible for humans. Walterspiel gave an example to Ms. Perroncel. *Id*. ¶ 65. Walterspiel thus concluded that some data in Bayer's Cipro® pediatric studies was false. *Id*. ¶ 66.

Quintiles collected Cipro® pediatric data under contract with Bayer AG for the two studies at issue which Bayer used in support of Bayer's application for the patent extension. *Id*. ¶¶ 24, 71. The false data should have been clearly noticeable to Quintiles' agents. *Id*. ¶ 72. Neither Quintiles nor Bayer disclosed to the FDA the false data. *Id*. ¶ 73.

In December, 2003 and January-June, 2004, Bayer presented requests for payment of funds from the United States under contracts for the purchase of Cipro®. *Id*. ¶ 85. In December, 2003 and January -June of 2004, Defendants had knowledge that Bayer had obtained a Cipro® patent extension by use of false records and statements. *Id*. ¶ 87. Defendants knew the prices Bayer was charging the U.S. for Cipro® were inflated. *Id*. Had Bayer not obtained a patent extension for Cipro® by false statements and records, the U.S. would have been able to contract with a competitor at generic prices, and the U.S. would not have approved or paid claims by Bayer at the falsely inflated price. *Id*. ¶ 88. The price for a generic drug levels at 10% of the branded price, and countries were selling Cipro® for one thirtieth of the price prior to 2003. *Id*. ¶ 79. The U.S. loss from Defendant's Cipro® false claims during the 6 month extension was between $10-$20 million. *Id*. ¶¶ 77, 80, 89. As a result of Bayer's fraud in obtaining the patent extension, every contract Bayer obtained from the U.S. for Cipro® during the patent extension period was obtained under false pretenses, and each claim for payment under these contracts was false. *Id*. ¶ 90.

Prior to and during December, 2003, Defendants made, used, and caused to be made and used, false records and statements related to false Cipro® study data, to obtain a patent extension for Cipro®. *Id*. ¶ 94. Defendants acted with knowledge that these statements and records were false. *Id*. ¶¶ 95-96. Defendants, in the

Cipro® patent extension application, and thereafter, made false representations to the Government, by express and implied statements that Bayer was entitled to the Cipro® patent extension and entitled to continue to enjoy a monopoly on the sale of Cipro® when Defendants knew this extension had been obtained by use of false statements and records. *Id.* ¶ 98.

To Plaintiff's knowledge, no written consent from the United States to the District Court's March 25, 2015 dismissal of Plaintiff's claims was filed (as required by the District Court's Order of December 7, 2011, JA 172; DE 30).

## B.    Procedural History

On September 1, 2009, Dr. Walterspiel filed under seal pursuant to the federal False Claims Act his Qui Tam Complaint in the United States District Court for the Southern District of Indiana. JA 179; DE 01. The case was later transferred to the United States District Court for the Middle District of North Carolina as a more appropriate venue.

On December 6, 2011, the United States filed its Notice of Declination to Intervene in the qui tam action pursuant to statute. JA 174; DE 29-main. In its proposed order, the United States included a statement that the case would not be dismissed without notice to the United States and without written consent from the United States. JA 177; DE 29-1.

On December 7, 2011, the District Court issued an Order lifting the seal and directing service on Defendants.  JA 172; DE 30.  In this Order the Court adopted the United States' proposed requirement that the case not be dismissed without notice to the United States and without written consent from the United States.  *Id.* To Plaintiff's knowledge, no such written consent from the United States to the later dismissal of Plaintiff's claims by the District Court was filed.

On March 14, 2012, The District Court issued an Order for a status report regarding service of process on Defendants.  JA 171; DE 31.

On March 20, 2012, Dr. Walterspiel filed his status report regarding his plan for service of process on Defendants.  JA 167; DE 32.

On March 21, 2012, the District Court issued an Order for a supplemental status report regarding service of process on Defendants.  JA 166; DE 33.

On March 26, 2012, Dr. Walterspiel filed his supplemental status report regarding the arrangements he had made for service of process on Defendants.  JA 164; DE 35.

On March 28, 2012, the District Court issued Summons for the Defendants. JA 160; DE 36.

On May 3, 2012, Defendant Bayer not having appeared, the District Court issued an Order to Show Cause regarding the service of process on Defendant Bayer AG.  JA 158; DE 44.

On June 2, 2012, Dr. Walterspiel filed his Response to Order Show Cause explaining his efforts to effect service of process on Defendant Bayer AG including his service of process on Bayer AG's subsidiary Bayer Corporation in Pittsburgh, Pennsylvania. JA 151; DE 50-main.  Along with this Response, Dr. Walterspiel filed Attorney Harrison's Declaration regarding these efforts to serve process on Bayer AG.  JA 156; DE 50-1.

On October 19, 2012, Defendant Quintiles filed its Motion to Dismiss and supporting Memorandum.  JA 147; DE 72-main; JA 121; DE 73-main.

On November 27, 2012, Dr. Walterspiel filed his Response in Opposition to Quintiles' Motion to Dismiss.  JA 99; DE 77-main.

On August 8, 2013, the District Court Clerk issued a Notice regarding a perceived potential failure to serve process on Defendant Bayer AG.  JA 98; DE 81.

On August 22, 2013, Dr. Walterspiel filed his Response to the Clerk's Notice explaining his efforts to serve Bayer AG.  Dr. Walterspiel. JA 86; DE 82-main. With this Response, filed Attorney Harrison's Declaration regarding the efforts made to serve process on Bayer AG.  JA 95; DE 82-1.

On September 9, 2013, Quintiles, although not a subject of the Clerk's Notice regarding service of process, filed a reply to Dr. Walterspiel's Response to the Clerk's Notice regarding service on Bayer AG. JA 81; DE 83.

On December 19, 2014, the Magistrate issued her Opinion and Recommendations concluding that Plaintiff's claims against both Defendant Quintiles and Defendant Bayer AG should be dismissed.  JA 64; DE 84

On January 15, 2015, Dr. Walterspiel, after obtaining a short extension of time from the District Court, filed his Specific Objections to the Magistrate's Opinion and Recommendations, asking, *inter alia*, that the District Court take Judicial Notice of certain adjudicative facts.  JA 42; DE 88-main.

On February 2, 2015, Quintiles filed its Response to Dr. Walterspiel's Specific Objections to the Magistrate's Opinion and Recommendations. JA 24; DE 89.

On March 25, 2015, the District Court issued an Order adopting the Magistrate's Opinion and Recommendations entirely, without any discussion of Dr. Walterspiel's specific objections and without deciding Dr. Walterspiel's request for Judicial Notice, concluding that Dr. Walterspiel's claims against all Defendants should be dismissed.  JA 22; DE 90.  To Plaintiff's knowledge, no written consent from the United States to this dismissal of Plaintiff's claims by the District Court was filed (as required by the District Court's Order of December 7, 2011, JA 172; DE 30).

On March 25, 2015, the District Court entered final Judgment for the Defendants.  JA 21; DE 91.

This appeal followed, with Dr. Walterspiel filing his Notice of Appeal on April 24, 2015. JA 17; DE 92.

**C.    Rulings Presented for Review**

The rulings presented for review in Dr. Walterspiel's appeal here are those made explicitly and implicitly by the District Court in its final Order and final Judgment for Defendants entered in this action on March 25, 2015 (JA 21, DE 91, JA 22, DE 90) which adopted the Magistrate's findings and conclusions (JA 64, DE 84) in their entirety.

These explicit and implicit rulings include the District Court's rulings that Plaintiff Dr. Walterspiel's claims against Quintiles should be dismissed for failure to plead with sufficient particularity, that Dr. Walterspiel should not be allowed leave to amend to state more particulars, and that Dr. Walterspiel's request that the District Court take Judicial Notice of certain adjudicative facts should be denied. JA 21, DE 91; JA 64, DE 84.

These explicit and implicit rulings include the District Court's rulings that Plaintiff Dr. Walterspiel's claims against Quintiles should be dismissed because Defendants' alleged false claims and false statements were not material to the Government's decisions to pay Bayer's claims for payment. JA 21, DE 91; JA 64, DE 84.

These explicit and implicit rulings include the District Court's rulings that Dr. Walterspiel's claims against Bayer AG should be dismissed for insufficient service of process, and that Dr. Walterspiel should not be allowed more time to effect service against Bayer AG in a foreign country.  JA 21, DE 91; JA 64, DE 84.

These explicit and implicit rulings include the District Court's implicit ruling that Plaintiff Dr. Walterspiel's detailed and specific objections to the Magistrate's Opinion and Recommendations deserved no mention or discussion and that the Magistrate's Opinion and Recommendations should be adopted without any exception.  JA 21, DE 91.


### IV.    SUMMARY OF ARGUMENT

The District Court erred as a matter of law in dismissing Plaintiff Dr. Walterspiel's claims against Defendant Quintiles Transnational Corp., the company that contracted with Bayer AG to perform the study alleged to have been falsified, on Quintiles' Motion to Dismiss, based on the District Court's conclusion that Plaintiff failed to plead with sufficient particularity to meet the normal enhanced pleading standard under Fed.R.Civ.Proc. 9(b).  The detailed allegations of the Complaint were sufficient under the circumstances to meet the normal Rule 9(b) pleading standard. This is particularly so given the nature of the scientifically anomalous study data regarding impossible joint angle movements and repetitious

identical purported measurements of children's joint angle movements, which was observed first hand by Dr. Walterspiel, who is himself a medical expert on such matters.

The District Court also erred as a matter of law in failing to apply a "relaxed" pleading with particularity standard in light of the facts here where most of the records evidencing the additional particulars of the false claims remain under the control of the Defendants. Several Circuit Courts have adopted this relaxed standard under Rule 9(b) and it would be appropriate for the Fourth Circuit to adopt such a standard here.

The District Court also erred as a matter of law in concluding that the Defendants' false statements and false claims alleged by Plaintiff were not material to the Federal Government's decisions to pay Defendant Bayer AG's claims for payment. It is hard to imagine that a reasonable government official would not be likely to influenced by false allegations regarding a study of adverse impacts of a key antibiotic in children, an antibiotic chosen for use in the event of a bioterror attack. It is also hard to imagine that a reasonable government official would not be influenced by misrepresentations that the government price of such a key drug was ten times more expensive than it need be. The District Court erred as a matter of law in concluding that the Defendants' alleged false statements and false claims were not material to the Government's decisions to continue to pay Bayer the full

brand name price for Cipro when, absent Defendants' false claims and false statements, the Government could have purchased Cipro from a generic manufacturer during the patent extension period in question for approximately 10% of the brand name price.

The District Court abused its discretion in refusing to allow Plaintiff Dr. Walterspiel leave to amend his Complaint to add more particulars based on information that was available and of which the Court could take Judicial Notice. The Magistrate raised concerns in her Opinion regarding lack of specific allegations in the Complaint regarding the availability of generic competition and regarding the Government's contracts with Bayer.  However, these facts are widely known and have been publicly reported.  Dr. Walterspiel offered documentation of those facts and details in his Objections to the Magistrate's Opinion and asked the District Court to take Judicial Notice of same.  Clearly an amendment to articulate these details would not have been futile.  Further, Dr. Walterspiel asked the District Court to take Judicial Notice of proffered documents showing Bayer Corporation's agency for Bayer AG, another matter the Magistrate found not sufficiently addressed in the Complaint or otherwise.  The District Court erred as a matter of law in not taking such Judicial Notice, in both cases mentioned, and abused its discretion in declining to allow the Complaint to be amended.

The District Court erred as a matter of law in dismissing Dr. Walterspiel's

claims against Defendant Bayer AG, the pharmaceutical company that is alleged to have submitted the false study results to the Federal Drug Administration (FDA) in order to obtain a patent extension for Cipro, based on the District Court's conclusion that Bayer AG had not been timely served with process. Dr. Walterspiel had in fact served Bayer's corporate subsidiary and agent in the United States, Bayer Corporation in Pittsburgh, which was legally sufficient service to bring Bayer AG into the case. Dr. Walterspiel had also taken additional steps to serve Bayer AG directly including a FEDEX international delivery of the Complaint and summons to Bayer AG's headquarters in Germany, which taken with the service on Bayer Corporation was sufficient to meet the service of process requirements of the applicable state (Indiana here), which state procedures are incorporated into the federal procedures for service via Rule 4.

The District Court abused its discretion in refusing to allow Plaintiff Dr. Walterspiel more time to serve Bayer AG in Germany given that there is no deadline in the Federal Rules for service in a foreign country. The Clerk and apparently the Magistrate were operating under the mistaken understanding that Rule 4's 120 day requirement for domestic service of process applied to service in a foreign country, which it does not. There would have been no prejudice to Bayer AG, who was on actual notice of the litigation via Dr. Walterspiel's service efforts, to allow additional time for more formal service of process on Bayer in Germany.

The District Court also abused its discretion in adopting the Magistate's Opinion and Recommendation *In Toto* without addressing any of Plaintiff's detailed Objections thereto, and without addressing Dr. Walterspiel's request that the District Court take Judicial Notice of certain adjudicative facts. Given the complexity and import of the matters at issue, Plaintiff's detailed objections, Plaintiff's documented request for Judicial Notice, and the outstanding issue of the Government's consent to dismissal in a qui tam case, the District Court's silent adoption *In Toto* of the Magistrate's Opinion and Recommendations was arbitrary and capricious.

## V.    ARGUMENT

### A.    Plaintiff Dr. Walterspiel Satisfied the Normal Pleading with Plausibility Standard and the Particularity Requirements of Rule 9(b).

Whether a party has satisfied the pleading requirements of Rule 9(b) and the general plausibility pleading standard sufficient to defeat a motion to dismiss is an question of law reviewed *de novo*. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

The Magistrate, in her Opinion and Recommendations at 9-13, made findings and conclusions, adopted by the District Court, that Plaintiff had not pled his claims against Quintiles with the requisite plausibility and particularity and that Walterspiel's claims should be dismissed. Those conclusions were clearly

erroneous and contrary to law. Contrary to the District Court's conclusions, Dr. Walterspiel has not failed to plead with the requisite plausibility or particularity.

In the Complaint, Plaintiff clearly articulated how Quintiles caused Bayer to submit false claims by causing Bayer to submit false data to the U.S. to get Bayer's application for the Cipro® patent extension approved. Plaintiff pled details which state plausible and sufficiently particular allegations of violations of the False Claims Act.

The details Plaintiff did plead reflect that he had sufficient personal access to Defendants' records and personnel to observe key facts that reflect the false claims violations alleged more likely than not occurred (and that his Complaint is not a "fishing expedition). The Cipro® six months market exclusivity extension was granted to Bayer AG in December of 2003. Complaint, JA 179; DE 1 at ¶ 51. Bayer submitted to FDA Bayer studies #100169 and #100201 in support of its application. *Id*. ¶ 52. Dr. Walterspiel found improbable joint angle measurements in some subjects and asked Ms. Renee Perroncel, the senior clinical research associate that Bayer had assigned to Dr. Walterspiel, to help him find the correct data. *Id*. ¶ 56. Ms. Perroncel agreed that the measurement data in question were wrong and brought the issue to the attention of Bayer's management.

The Cipro® patent extension team was led by a neurologist. *Id*. ¶ 57. Ms. Perroncel was asked by the neurologist to "confirm" the values by asking the

investigators to sign that these values were measured at their sites and correct. Ms. Perroncel told Walterspiel thereafter that letters from the investigators had arrived. *Id*. ¶ 58. Such confirmations were false, and should have appeared so on their face. *Id*. ¶ 70.

Relator Walterspiel's doubts about the integrity of the data were increased when he noticed a lack of variability in the measurements from some sites, and a lack of use of any analytical methods by Bayer or Quintiles to flag suspect data. *Id*. ¶ 59. Such analytical tools are commonly used by Pharmaceutical company statisticians prior to study databank closure, and were taught to Dr. Walterspiel during a course at the FDA. *Id*. Part of the safety data to be collected were maximal and minimal angles to which joints could be freely moved before, after and longer after the study. This was to detect short and long term joint cartilage or tendon damage. *Id*. ¶ 63. While retrieving data from the database on adverse effects, Walterspiel noted long rows of joint angle data that were obviously just "filled in," that repeated themselves and did not reflect the normal variations that other investigators recorded. Some of these data included implausible values. Relator took to Ms. Perroncel examples of anomalous data. *Id*. ¶ 64. Walterspiel noticed that there were several entries having values for joint angles that were scientifically impossible, i.e. joint angles indicating a range of movement impossible for humans. Walterspiel gave an example to Ms. Perroncel. *Id*. ¶ 65.

Walterspiel thus concluded that some data in Bayer's Cipro® pediatric studies was false. *Id*. ¶ 66.

Quintiles collected Cipro® pediatric data under contract with Bayer AG for the two studies at issue which Bayer used in support of Bayer's application for the patent extension. *Id*. ¶¶ 24, 71. The false data should have been clearly noticeable to Quintiles' agents. *Id*. ¶ 72. Neither Quintiles nor Bayer disclosed to the FDA the false data. *Id*. ¶ 73.

In December, 2003 and January-June, 2004, Bayer presented requests for payment of funds from the U.S. under contracts for the purchase of Cipro®. *Id*. ¶ 85. In December, 2003 and January -June of 2004, Defendants had knowledge that Bayer had obtained a Cipro® patent extension by use of false records and statements. *Id*. ¶ 87. Defendants knew the prices Bayer was charging the U.S. for Cipro® were inflated. *Id*. Had Bayer not obtained a patent extension for Cipro® by false statements and records, the U.S. would have been able to contract with a competitor at generic prices, and the U.S. would not have approved or paid claims by Bayer at the falsely inflated price. *Id*. ¶ 88. The price for a generic drug levels at 10% of the branded price, and countries were selling Cipro® for one thirtieth of the price prior to 2003. *Id*. ¶ 79. The U.S. loss from Defendant's Cipro® false claims during the 6 month extension was between $10-$20 million. *Id*. ¶¶ 77, 80, 89. As a result of Bayer's fraud in obtaining the patent extension, every contract

Bayer obtained from the U.S. for Cipro® during the patent extension period was obtained under false pretenses, and each claim for payment under these contracts was false. *Id.* ¶ 90.

Prior to and during December, 2003, Defendants made, used, and caused to be made and used, false records and statements related to false Cipro® study data, to obtain a patent extension for Cipro®. *Id.* ¶ 94. Defendants acted with knowledge that these statements and records were false. *Id.* ¶¶ 95-96. Defendants, in the Cipro® patent extension application, and thereafter, made false representations to the Government, by express and implied statements that Bayer was entitled to the Cipro® patent extension and entitled to continue to enjoy a monopoly on the sale of Cipro® when Defendants knew this extension had been obtained by use of false statements and records. *Id.* ¶ 98.

Consequently, every contract Bayer obtained from the Government for Cipro® during the patent extension was obtained via false pretenses and fraud. *Id.* ¶ 100. As a result, every claim for payment under these contracts was a false claim, *See, Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir.1999). Quintiles' use of false statements and records, specifically including the submission of false study data to Bayer for submission to the FDA, caused these false claims to be presented and paid. Complaint Dkt#1 ¶ 101.

It is clear from the cited Complaint allegations that Walterspiel alleged that

Quintiles conducted a study of Cipro®'s adverse effects in children under contract with Bayer, that Plaintiff worked under contract with Bayer to review the study data provided by Quintiles to Bayer, that Plaintiff, a respected and accomplished physician and pediatrician, noticed not only a large number of instances of unnaturally uniform data regarding the maximum angle of joint movements but also noticed examples of data that reflected physically impossible joint angle movements. Such observations by a pediatrician would be analogous to a pilot or engineer observing data submitted by a military contractor reflecting that aircraft produced by the contractor was clocked as flying 5 time the speed of light (not sound). Such scientifically impossible data would be an unmistakable red flag that the data was false. The only issue would be whether the false data was knowingly submitted.

Here, that latter question is addressed in Walterspiel's additional allegations, noted above, that he reported his observations to his contract manager at Bayer, Ms. Perroncel, and she acknowledged that the data was wrong and promised to report Dr. Walterspiel's concerns to her superiors. She reported to Dr. Walterspiel that she reported his concerns about the suspect data to her superiors and her superiors then simply asked that she have the investigators confirm the data as accurate, which Perroncel reported was subsequently done. This purported confirmation of impossible data had to have been done by either Quintiles or its

contracted agents through Quintiles since Quintiles had the study contract.

Rather than resolving Walterspiel's concern about erroneous data, this purported effort to confirm this data actually confirmed that the data was not simply erroneous but was knowingly false. The impossible joint angle movements and the rows and rows of uniform joint angle movement data simply could not be honestly confirmed as accurate. Continuing the aircraft contractor analogy, this purported confirmation would be like the pilot or engineer asking the contractor to re-examine the 5-times-the-speed-of-light test flight data and have the contractor state that such data was correct. There is no need in such circumstances for volumes of additional fact detail in order to sufficiently allege false claims violations with the particularity required by Rule 9(b) or with the plausibility required under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

It is clear from these facts observed and alleged by Dr. Walterspiel that he is not on a fishing expedition but has seen and heard with his own eyes and ears enough regarding Quintiles' study for Bayer that he can conclude to a reasonable degree of scientific certainty that Bayer and Quintiles knowingly submitted false data to the Federal Government regarding the study of Cipro®'s adverse effects in children, and Quintiles' falsification of that data, or knowing failure to correct the false data, caused Bayer to submit false claims to the United States. These false

claims were for payment for Cipro® at prices many times greater than the generic price the Government would have paid absent the false claims. The United States was fraudulently induced to issue the 6 month patent extension which it would not have done had Bayer or Quintiles disclosed to the Government the false data reported by Walterspiel.

The Fourth Circuit's decision in *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785-88 (4th Cir. 1999) supports Walterspiel's position here that there was fraud in the inducement involving Bayer and Quintiles falsifying a pediatric study for Cipro® to induce the FDA into granting a Cipro® patent extension to Bayer, and then Bayer using the fraudulently obtained patent extension to induce the United States to pay brand name price for Cipro® when Defendants knew Bayer was not entitled to such prices.

Absent Quintiles submission of this false data to Bayer, Bayer would not have been able to obtain its patent extension on the pretense that it had conducted a legitimate study of Cipro®'s adverse effects in children. Absent the patent extension, Bayer would not have been able to continue to charge its high price for the large quantities needed by the U.S. because it would have faced competition from generic manufacturers.

The above alleged facts are legally sufficient to state plausible violations of the FCA and with sufficient particularity (the who, what, when, where, and how) to

satisfy Rule 9(b) for Counts 1, 2, and 3. The "what" is spelled out in the Complaint in detail regarding the falsification of joint angle movement data in a pediatric study of Cipro® used to obtain an undeserved patent extension for Cipro® for Bayer, which was used in turn to justify claims for payment to the United States for Cipro® at non-generic prices. The "when" is sufficiently clear, with the false study being conducted in the months prior to the FDA grant of the patent extension in December of 2003, and the false claims for payment for Cipro® purchases being presented during the six months thereafter.

The "where" is also clear, with the Complaint alleging the location of the defendants and the false pediatric studies, the submission of the false data to FDA, and the submission of subsequent claims to the federal agencies responsible for buying antibiotics (e.g., the Defense Department, the Veterans Administration, and Homeland Security). The "Who" is addressed in terms of Walterspiel knowing which corporate entities were involved and that persons in certain positions were involved, but Dr. Walterspiel cannot recall all of the names of the "Doe" defendants. Dr. Walterspiel does remember that the Bayer "Doe" defendants are Dr. Pam Cyrus, Dr. Cyrus' predecessor (whose name is now recalled to be Dr. Deborah A. Church), and Renee Perroncel DeLaurentis. The remaining "Doe" defendants' names can be obtained via discovery.

Given the fact allegations above, based on Dr. Walterspiel's personal

knowledge, the Court should not dismiss Plaintiff's Counts 1, 2, and 3 claims

under Rule 9(b).  *See*, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d

776, 783-85 (4th Cir. 1999).

> A court should hesitate to dismiss a complaint under Rule 9(b) if the
> court is satisfied (1) that the defendant has been made aware of the
> particular circumstances for which she will have to prepare a defense
> at trial, and (2) that plaintiff has substantial prediscovery evidence of
> those facts.

*Id*.  In regard to Count 3 specifically, the Conspiracy claim, the facts cited above

and in the Complaint are sufficient to allow a reasonable inference of a conspiracy

to submit false claims between Defendant Bayer Ag and Defendant Quintiles.


**B.      A "Relaxed" Rule Regarding Pleading with Particularity Should Have
Been Applied by the District Court Because the Bulk of the Records
Evidencing the Additional Particulars of the False Claims Remain
Under the Control of the Defendants.**

The question of what legal standard for particularity in pleading should be

applied on review of a dismissal on a motion to dismiss is one of law and thus is

reviewed *de novo*.  *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

Plaintiff pled details which state plausible allegations of violations of the

False Claims Act (FCA) and with particularity that satisfies Rule 9(b), but in the

alternative, even if this Court were to find otherwise, because most of the

additional details of Quintiles' and Bayers' false claims violations that could

otherwise be pled are under the exclusive control of Defendants, a relaxed Rule

9(b) pleading standard should apply.

The Magistrate, in her Opinion and Recommendations, adopted by the District Court, failed to apply the correct legal standard. Pleading requirements under Rule 9(b) are relaxed where the additional particulars that could otherwise be pled are under the exclusive control of the defendants. *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir.1988); *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir.1987); *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir.2003); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 229 (1st Cir. 2004).  Here, the additional details the Magistrate and District Court demanded were in the Defendants government contracts, and in inter-corporate and intra-corporate communications (regarding Bayer Corporation's agency for Bayer AG) not available to the public or Dr. Walterspiel absent the opportunity for discovery.

> It is difficult to see how MedSystems could have pled fraud or scienter with more specificity without … the opportunity to conduct any discovery. Here, the necessary information … lies in the defendant's hands. …[T]he pleading standard required by Fed.R.Civ.P. 9(b) could be relaxed "when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1990); *see also Shapiro*, 964 F.2d at 285 … .

*EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000).

Rule 9(b) is not to be applied with rigidity. *Pirelli Armstrong Tore Corp.*

*Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

A plaintiff is not required to plead with "omniscience". *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012). Rule 9(b) is to be read in harmony with Rule 8's requirement of a short, plain, and concise statement of a claim. *U.S. ex re. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009); *U.S. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

Appellant Dr. Walterspiel has not located any case from the United States Court of Appeals for the Fourth Circuit that addresses the issue of the appropriateness of applying a relaxed Rule 9(b) standard under such circumstances (where the Defendant controls the information regarding additional particulars). Appellant respectfully suggests that this Circuit adopt the relaxed pleading standard consistent with the decisions from other Circuit Courts of Appeal referenced above.

**C.     The Defendants' False Statements and False Claims Alleged by Plaintiff Were Material to the Federal Government's Decisions to Pay Defendant Bayer AG's Claims for Payment.**

The question of whether a false statement or false claim was material to the Government's decision to pay a claim is a question of law reviewed *de novo*. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

The Magistrate, in her R.D. at 10 and 11, concluded that the fraud alleged

against Quintiles was not material to the U.S.'s decision to pay Bayer for purchase of Cipro®, that Bayer's FDA submission of the (false) study data was not related to Bayer's later claims for payments from the U.S., and that the connection between these Bayer claims for payment and Bayer's FDA submission for the patent extension based on Plaintiff's allegations was attenuated. The District Court adopted these findings and conclusions as well (again without comment on Plaintiff's objections).

The Magistrate's logic, adopted by the District Court, in adopting Quintiles' lack of materiality argument reflects an error of law. To be material, a fact need only be logically capable of influencing the decision of a reasonable government decision maker. Here, false representations of having done an honest study of a key antibiotic's adverse impacts on children and resulting false representations of an entitlement to a patent extension that would cost the Federal Government millions of dollars are clearly representations that would likely affect a reasonable government official's decision to pay Bayer's claims for payment. Further, it is clearly reasonable to conclude that the Government would want to hold a wrongdoer accountable for falsifying a study of adverse health effects from a key drug in children, particularly one used for defending against a biological terror attack or biowarfare.

It is equally reasonable to conclude that if the Government had an

opportunity to pay ten times less for a product it spends millions of dollars purchasing that the Government would want to know of that opportunity rather than be fooled into wasting millions of taxpayer dollars. These type of false representations clearly have a natural tendency to influence the Government's decisions. *See*, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999).

**D.     Plaintiff Dr. Walterspiel Should Have Been Granted Leave to Amend His Complaint to Add More Particulars Based on Information that Was Available and of which the Court Could Take Judicial Notice.**

The question of whether a District Court should have permitted a complaint to be amended to plead with greater particularity is reviewed under an abuse of discretion standard, but as discussed below, leave is to be given freely as justice requires.  The Magistrate, in her Opinion, JA 64, DE 84 at 10, 12, and 13, concluded that Plaintiff should not be allowed discovery or leave to amend his allegations regarding Quintiles' involvement in the alleged false claims, and that allowing discovery would be to allow the sort of fishing expedition that would defeat the purpose of Rule 9(b).  As noted *supra*, the Complaint allegations are sufficiently detailed and based on Dr. Walterspiel's personal knowledge and expert medical observations that the Complaint can hardly be fairly characterized as a "fishing expedition."

The Magistrate, in her Opinion and Recommendations, JA 64, DE 84 at 9 note 6, found and concluded, that Dr. Walterspiel did not offer sufficiently specific information regarding the availability of competition for Bayer from manufacturers of generic Cipro® but again this information is so widely known and reflected in public litigation that the Court could, and should, take judicial notice pursuant to Fed. R. Evid. 201. *See, e.g.*, JA 244, DE 88-5 (Congressional Budget Office report noting generic manufacturers were poised to enter Cipro® market when Bayer patent expired); JA 248, DE 88-6 (*In Re Ciprofloxacin Hydrochloride Antitrust Litigation*, Case No. 1:00-MDL-1383, Memorandum and Order (E.D. N.Y. March 3, 2005) giving history of Cipro® generic manufacturers disputes with Bayer AG and Bayer Corporation).

These evidentiary documents cited *supra* make clear that if more particularity in pleading is required on these matters, that an amendment to add such additional particularity would not be futile. Leave to amend to cure fact allegations that lack the required particularity under Rule 9(b) is, absent futility, to be freely granted. *U.S. ex rel. Estate of Cunningham v. Millenium Labs of Cal., Inc.*, 713 F.3d 662, 676 (1st Cir. 2013); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011); *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454-55 (5th Cir. 2005).

Similarly, Dr. Walterspiel did not have access to details of Bayer's Federal

Government contracts for sale of Cipro® to the United States military and departments of Homeland Security, Health and Human Services, and Veterans Affairs, but it is widely known that Bayer Corporation and Bayer AG have received large contracts with Federal Government agencies. *See*, JA 349, DE 88-12; JA 347, DE 88-11. It is also well documented that the United States purchased large quantities of Cipro® from Bayer. *See*, JA 213, DE 88-1 (U.S. Dept. of Health and Human Services 2001 Bayer Cipro® negotiations); JA 216, DE 88-2 (Boston University report on Government Cipro® purchases from Bayer in three installments); JA 224, DE 88-3 (Congressional Research Service report noting 2004 appropriations for Anthrax defense); JA 243, DE 88-4 (Government Accounting Office report noting Cipro® is purchased for the U.S. Strategic National Stockpile). The District Court was requested to take Judicial Notice of these facts (JA 42-63, DE 88), and should have taken judicial notice of these facts or allowed Plaintiff to amend to assert these details if required.

If the Court finds that more particularity in Plaintiff's allegations is required, Plaintiff requests that, in lieu of affirming the District Court's decision to dismiss, that this Court remand with instructions that Plaintiff be granted leave to amend.

**E.    Defendant Bayer AG, a German Company, Was Validly Served with Process Via Service on Its Corporate Subsidiary and Agent in the United States.**

The question of whether service of process was valid and legally sufficient, where the facts regarding such service are undisputed facts as here, is a question of law to be reviewed *de novo*. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

Contrary to the District Court's conclusion, in adopting the Magistrate's Opinion and Recommendations, Plaintiff has effected service on Bayer AG via its subsidiary. The steps taken by Dr. Walterspiel through his counsel to serve Bayer AG were legally sufficient under Fed.R.Civ.P. 4.

Given that Plaintiff alleged in the Complaint, JA 179, DE 1 at ¶ 22, that "Bayer A.G.'s principal place of business in the United States is Pittsburgh, Pennsylvania", it is not clear why on the *sua sponte* equivalent of a motion to dismiss by the Magistrate that this allegation should not be taken as true and Plaintiff's service on Bayer in Pittsburgh be deemed valid absent some countervailing evidence. No such contrary evidence was noted in the Magistrate's decision and such contrary evidence was not and could not have been submitted by an opposing party as Bayer had not appeared (and Quintiles had no standing to do so).

In any case, the evidence clearly shows that Plaintiff did actually effectuate service on Bayer AG. Plaintiff caused the summons and complaint to be served on Bayer Corporation at its Headquarters in Pittsburgh by delivery via FedEx

addressed to the CEO of such corporation and that the summons and complaint was received by Bayer Corporation at its headquarters on or prior to March 30, 2012. JA 352; DE 82-2 (FEDEX documentation re Bayer service); JA 355; DE 82-3 (FEDEX documentation re Bayer service); JA 358; DE 82-4 (Constable Invoice for Bayer service in Pittsburgh). The Complaint and Summons were sent to Bayer AG in Germany by Dr. Walterspiel via FEDEX. JA 359; JA 360, DE 82-5 (FEDEX documentation for summons and complaint sent to Bayer in Germany).

As noted, in addition to using FEDEX, Plaintiff also arranged for the summons and complaint to be served on Bayer Corporation at its Headquarters in Pittsburgh by Pennsylvania Constable William Smedley, addressed to the CEO. JA 358; DE 82-4. As explained in Dr. Walterspiel's Response to the Clerk's Notice regarding service on Bayer, Constable Smedley on March 30, 2012 offered the summons and complaint to Bayer Corporation's counsel in person but Bayer's counsel refused to accept the summons and complaint. JA 86, DE 82; JA 95, DE 82-1.

The Constable then sent on March 30, 2012 the summons and complaint via FedEx next day delivery to Bayer AG's headquarters in Germany. JA 360, DE 82-5. Plaintiff's Counsel received correspondence from Bayer AG from Germany acknowledging receipt of this summons and complaint. JA 95, DE 82-1. The FCA, 31 U.S.C.A. § 3732(a), provides for service anywhere in the U.S. and anywhere

outside the U.S. This statute appears to authorize service in a foreign country by any means allowed under the federal rules and incorporated state rules for service in the U.S., which include use of commercial courier.

Plaintiff's efforts to serve Bayer AG described above actually effectuated, rather than merely attempted, service via Bayer's subsidiary agent. The Federal Rules adopt the relevant state's rules for service in addition to providing additional federal procedures. *See*, Rule 4.

Under the law of the applicable state, Indiana law here, the methods of service only have to be reasonably calculated to give a defendant actual notice. *See*, *WW Extended Care, Inc. v. Aetna Life Ins. Co.*, 755 N.E.2d 712, 716 (Ind. App. 2001). In this case, Plaintiff's efforts not only were reasonably calculated (via service by a constable on Bayer AG's subsidiary, service via FedEx on same, and service by FedEx on Bayer AG in Germany), but actually did give Bayer AG actual notice as Bayer AG acknowledged.

A foreign parent corporation is subject to service in the United States via service on its subsidiaries who conduct its business in the United States, are not independent of the parent, or are controlled by the parent company. *General Elec. Co. v. Deutz Ag*, 270 F.3d 144 (3rd Cir 2001) (quoting Wright & Miller).

The Magistrate, in her Opinion, JA 64, DE 84 at 13-16, concluded that Walterspiel's claims against Bayer AG should be dismissed because Plaintiff had

"put forth no evidence or argument" to show that defendant Bayer AG's subsidiary Bayer Corporation was an agent of Bayer AG for receipt of service. The District Court adopted the Magistrate's analysis and conclusions.  Plaintiff has had no opportunity for discovery of facts related to Bayer Corporation serving as agent for Bayer AG and there was no evidentiary hearing. Bayer has not appeared to make a motion to dismiss regarding service of process. The Magistrate's dismissal for lack of service on Bayer AG was *sua sponte*.  As far as Plaintiff knew, his response to the Clerk's Notice was deemed sufficient in regard to service on Bayer.  Had Plaintiff been given notice that the Magistrate was contemplating dismissal of Plaintiff's claims against Bayer because Plaintiff had "offered no evidence" on agency, Plaintiff would have filed a motion for leave to conduct discovery on that issue and to hold an evidentiary hearing.

The Magistrate in her Opinion, JA 64, DE 84 at 13, at least implied that Dr. Walterspiel was not responsive to the Court on the occasions when the then-presiding district court or its clerk raised the Bayer service issue. However, when the District Court (in Indiana) first raised the issue, Plaintiff recounted for the Court the steps taken by Plaintiff to serve Defendant Bayer AG via service on its corporate subsidiary Bayer Corporation at its headquarters in Pittsburgh, Pennsylvania via delivery by a constable and via FedEx, with a FedEx copy sent to Bayer AG headquarters in Germany.  In response, that District Court took no

further action nor expressed further concerns about service on Bayer AG.

When the Clerk for the District Court for the Middle District of North Carolina below raised the question, Plaintiff again recounted the steps that he took to serve Bayer AG which he continued to believe were legally sufficient. *See*, JA DE 82 (Plaintiff's response memorandum and exhibits). The Clerk then took no further action on the matter.

Only after <u>Defendant Quintiles</u> raised the issue in its Motion to Dismiss, notwithstanding that it had no standing to do so for Bayer, did the Magistrate decide *sua sponte* to propose dismissal of Plaintiff's claims against Bayer AG. Bayer AG has not appeared and has filed no motion to dismiss or for summary judgment on the adequacy of service issue, nor has any opportunity for discovery regarding the agency of Bayer Corporation for Bayer AG been provided to Dr. Walterspiel.

Once on notice of the Magistrate's *sua sponte* concern about a lack of evidence and argument relating to Bayer Corporation's agency for Bayer AG, Dr. Walterspiel in his submission of his detailed specific Objections to the Magistrate's Opinion and Recommendations, put forth such evidence and argument and asked the District Court to take Judicial Notice of the documents provided and the factual information therein which reflected such agency.  JA 213; DE 88-1 (United States Department of Health and Human Services (DHHS) public notice re agreement to

purchase Cipro from Bayer Corporation); JA 216; JA 224; JA 244; JA 248; DE 88-6 (U.S. District Court, E.D. N.Y. Order re Cipro Antitrust Litigation); JA 326; DE 88-7 (U.S. FDA report on Bayer Corporation Cipro study); JA 338; DE 88-8 (Bayer Corporation contract with Walterspiel for Cipro study consultation); JA 340; DE 88-9 (Bayer AG report noting that Bayer Corporation in Pittsburgh is a fully consolidated subsidiary of Bayer AG); JA 346; DE 88-10 (U.S. FDA inspection report regarding Bayer's Cipro study).

The District Court implicitly denied Dr. Walterspiel's request for the taking of Judicial Notice and ignored Dr. Walterspiel's arguments regarding Bayer Corporation's agency. But the issue of service of process is a matter of personal jurisdiction which should have been addressed by the District Court and at minimum the District Court should have recognized that Dr. Walterspiel had a right under 28 U.S.C.A. § 1653 to amend his jurisdictional allegations, including about service of process on Bayer AG's agent in the United States, at any time.

Given the availability of the above referenced evidence, all of which was presented to the District Court in Dr. Walterspiel's Objections, if the District Court for some reason felt that Judicial Notice of these documents and facts as requested by Plaintiff was inappropriate, the granting of a motion for jurisdictional discovery would have been and would be an appropriate alternative under circumstances. *See*, e.g., *Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148

F.3d 1080, 1089-90 (1998).

Finally, in the alternative, Quintiles repeated assertion of argument on behalf of Bayer in this litigation in an effort to convince the District Court to dismiss the Plaintiff's claims against Bayer, even though Bayer has not appeared, should be deemed to be an admission that Quintiles itself is serving as an agent for Bayer AG.  Since Quintiles has been validly served with process, Bayer should be deemed to have been served by way of service on its agent Quintiles.

**F.     Plaintiff Should Have Been Allowed More Time to Serve Bayer AG in Germany Given that There Is No Deadline in the Federal Rules for Service in a Foreign Country.**

Generally, the question of whether a district court should have allowed a party more time to effect service of process beyond the time provided in Rule 4 for domestic service is reviewed under an abuse of discretion standard.  However, as here, where the question is in regard to service in a foreign country which is not governed by any deadline stated in Rule 4 or in any statute, whether a party should be allowed more time to effect such international service in the absence of any appearance by the defendant at issue and any motion by such defendant to dismiss showing prejudice should, in Plaintiff's view, be a question of law to be reviewed *de novo*.

The District Court, in adopting the Magistrate's Opinion and

Recommendations, declined to allow Dr. Walterspiel additional time to effect more formal service of process of Bayer AG in Germany. But even if Dr. Walterspiel's service of process on Bayer Corporation in Pittsburgh and his sending via FedEx the Complaint and Summons to Bayer AG in Germany were deemed insufficient, and more formal service on Bayer AG in Germany was required, such service now would not be untimely. There is no time limit under Rule 4 for service of a defendant in a foreign nation. Fed.R.Civ.P. 4. And, pursuant to 28 U.S.C. § 1653, jurisdictional allegations may be amended at any stage of the case (even on appeal).

The Court Clerk's Notice of August 8, 2013 regarding service was based on the requirements of Fed.R.Civ.P., Rule 4(m). However, Rule 4(m) in plain language states that its terms are not applicable to service in a foreign country. Even assuming, arguendo, that Plaintiff's service via constable and FedEx in Pennsylvania were legally insufficient, and that Bayer AG is the only entity that may be served, Rule 4(m) is inapplicable and not a basis for dismissal of Plaintiff's claims. Given the exemption for service in a foreign nation from Rule 4's 120 day deadline for service, leave of court is not required for additional time to serve a defendant in a foreign nation.

The Magistrate's conclusion that there is no cause for "extending" the time for service on Bayer AG in Germany, see Magistrate's Opinion, JA 64, DE 84 at15

note 11, is premised on the legally faulty assumption that there is a time limit for such service. *See*, *Lucas v. Natoli*, 936 F.2d 432, 432 (9th Cir. 1991) (no time limit for service in a foreign nation). There is also no time limit on when a pleading can be amended to cure defective jurisdictional allegations. 28 U.S.C.A. § 1653; *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 840-41 (4th Cir. 1974); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989); *Mathews v. Diaz*, 426 U.S. 67, 75 & n. 9 (1976); *District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C.Cir. 1986) ("Section 1653's liberal amendment rule permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal."). Where jurisdiction exists at the time the complaint is filed, the fact that jurisdiction was not properly pleaded will not deprive the court of jurisdiction if such defect is later remedied by amendment. *International Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 121 F.2d 561 (8th Cir. 1941).

Thus, Plaintiff should be allowed to amend his Complaint to assert additional details regarding personal jurisdiction and including facts relating to the Bayer Corporation serving as an agent in the United States for Bayer AG. 28 U.S.C.A. § 1653 provides an unqualified right to amend as compared to Fed.R.Civ.P. 15(a) which freely allows amendment where the interests of justice will be served and defendant will not be unfairly prejudiced. *Foman v. Davis*, 371

U.S. 178, 181-82 (1962); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971). Pleading is not a game of skill in which one misstep by counsel may be decisive and instead promote the principle that the pleadings should facilitate a proper disposition on the merits. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). *And see*, *Howard v. DeCordovo*, 177 U.S. 609, 614 (1899).

Although the District Court dismissed Dr. Walterspiel's claims against Bayer without prejudice, the fact that the statute of limitations will have run on many of Plaintiff's claims against Bayer AG, including Counts 1-3, makes a dismissal "without prejudice" actually prejudicial. Plaintiff requests, should this Court find that Plaintiff has not yet validly served Bayer AG, or has not sufficiently articulated the validity of such service, that, in lieu of dismissal, Plaintiff be given more time to serve Bayer AG in Germany pursuant to German law and/or to amend his jurisdictional allegations pursuant to 28 U.S.C. § 1653 to better reflect the service that was effected.

**G.    The District Court Abused Its Discretion in Adopting the Magistate's Opinion and Recommendation *In Toto* without Addressing Any of Plaintiff's Detailed Objections Thereto.**

Whether a District Court erred in adopting a magistrate's opinion and recommendation in its entirety and without comment is a question reviewed under an abuse of discretion standard. Dr. Walterspiel filed detailed objections to the

Magistrate's Opinion and Recommendations with citations to applicable law and record references including a request for the District Court to take Judicial Notice of numerous adjudicative facts relevant to the issue being decided. *See*, JA 42, DE 88. The District Court adopted the Magistrate's Opinion and Recommendations in its entirety without comment or any discussion of Plaintiff's detailed objections, and without deciding Dr. Walterspiel's request for Judicial Notice. Judicial Notice is required to be taken when the relevant information is supplied to the court as it was here.

The District Court also failed to note whether the United States had consented to the dismissal ordered by the District Court, which was arbitrary in light of the District Court's prior Order. To Plaintiff's knowledge, no written consent from the United States to this dismissal of Plaintiff's claims by the District Court was filed (as required by the District Court's Order of December 7, 2011, JA 172; DE 30).

Given the complexity and import of the matters at issue, Plaintiff's detailed objections, Plaintiff's documented request for Judicial Notice, and the outstanding issue of the Government's consent to dismissal in a qui tam case, the District Court's silent adoption *In Toto* of the Magistrate's Opinion and Recommendations was arbitrary and capricious.

**CONCLUSION AND RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff-Appellant Dr. Walterspiel respectfully requests that this Court of Appeals reverse the District Court's final Judgment and Order adopting the Magistrate's Opinion and Recommendation and remand for further proceedings on Plaintiff Dr. Walterspiel's claims against all Defendants, with direction that Defendant Quintiles' Motion to Dismiss be denied and that Dr. Walterspiel's service of process on Defendant Bayer AG be deemed legally sufficient.

In the alternative, should this Court conclude that Dr. Walterspiel's Complaint did not meet the applicable pleading with particularity standard, Dr. Walterspiel respectfully requests that this Court remand with instructions that Dr. Walterspiel be allowed 30 days in which to amend his Complaint. And, also in the alternative, should this Court conclude that Dr. Walterspiel's service of process on Defendant Bayer AG was not legally sufficient, Dr. Walterspiel respectfully requests that this Court remand with instructions that Dr. Waltgerspiel be allowed 30 days in which to perfect service on Bayer AG.

Respectfully submitted,

s/ Mick G. Harrison
Mick G. Harrison, Esq.
520 S. Walnut Street, #1147
Bloomington, IN  47402
(812) 361-6220 voice

(812) 650-4374 fax
mickharrisonesq@gmail.com

**Certificate of Compliance with Fed.R.App.P. 32(a)(7)**

The undersigned hereby certifies that this brief complies with the page limitations of Fed.R.App.P. 32(a)(7)(B)(i) and contains less than the maximum 14,000 words (less than 12,003 counting all sections) using the MSWord 2013 word count software.

s/ Mick G. Harrison
Mick G. Harrison, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff-Appellant's

Opening Brief and Appendix (Volumes I and II) were electronically filed this 1st

day of July, 2015, and Notice of this filing will be sent to all parties' counsel of

record who are registered for electronic filing by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

Kathleen McDermott (pro hac vice)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202.739.3000; Fax: 202.739.3001; kmcdermott@morganlewis.com
Counsel for Defendant Quintiles Transnational Corporation

The following parties' counsel who have not registered for electronic filing

and service have been served directly via email and mail with an electronic copy of

the foregoing Plaintiff-Appellant's Opening Brief and Appendix (Volumes I and

II) this 1st day of July, 2015.

Thomas Hurka
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Phone: 312.324.1000; Fax: 312.324.1001; thurka@morganlewis.com
Counsel for Defendant Quintiles Transnational Corporation

Jonathan D. Sasser
N.C. State Bar No. 10028
ELLIS & WINTERS
P.O. Box 33550
Raleigh, NC 27636
Phone: 919.865.7002; Fax: 919.865.7010; jon.sasser@elliswinters.com

Counsel for Defendant Quintiles Transnational Corporation

Cheryl T. Sloan, Assistant U. S. Attorney, NCSB #12557
U.S. Attorney's Office
P. O. Box 1858
Greensboro, NC 27402
336/333-5351; cheryl.sloan@usdoj.gov


<u>s/ Mick G. Harrison, Esq.</u>
Mick G. Harrison, Esq.
520 S. Walnut Street, #1147
Bloomington, IN  47402
(812) 361-6220 (voice); (812) 650-4374 (fax);
mickharrisonesq@gmail.com